**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **G.W.-1, I.W., A.W., and V.W.**

**No. 22-0090** (Gilmer County 21-JA-2, 21-JA-3, 21-JA-4, and 21-JA-5)

**MEMORANDUM DECISION**

Petitioner Father G.W.-2, by counsel Daniel K. Armstrong, appeals the Circuit Court of Gilmer County's December 22, 2021, order terminating his legal, parental, and custodial rights to G.W.-1, I.W., A.W., and V.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Julia R. Callaghan, filed a response on the children's behalf in support of the circuit court's order and a supplemental appendix.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2021, the DHHR filed a child abuse and neglect petition alleging that petitioner physically abused the children and the mother took no action to protect them. Then-eleven-year-old G.W.-1 reported that petitioner caused injuries to his legs, and a DHHR worker observed the bruising. G.W.-1 stated that this occurred when petitioner responded to a noise in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as the oldest child and petitioner share the same initials, we refer to them as G.W.-1 and G.W.-2, respectively, throughout this memorandum decision. Moreover, we refer to the circuit court's termination of petitioner's "legal, parental, and custodial rights" as the termination of parental rights for the ease of discussion.

his room and found G.W.-1 and then-five-year-old A.W. awake late at night. Petitioner, angry that the children were not asleep, "stomped their legs in their bed with his work boots on," causing bruises and abrasions on their legs. G.W.-1 reported another instance when petitioner "threw [him] up against the wall." G.W.-1 expressed fear of disclosing more incidents because he was afraid he would be hurt or grounded for the disclosures. He also expressed fear of returning home.

The DHHR arranged forensic interviews for G.W.-1, A.W., and then-eight-year-old I.W.; Then-two-year-old V.W. was not interviewed due to his young age. All three older children disclosed that the parents advised them to talk about "the good things" and instructed them "not to say bad words or talk about the scary stuff." A.W. described witnessing domestic violence, such as G.W.-1 being struck with a belt as discipline and petitioner "punch[ing]" the mother. I.W. stated that the mother "told her not [to] tell stuff that goes on in the house," such as "if mom or [petitioner] slaps or kicks us or makes us bleed." During the interview, I.W. also pointed to "fading bruises" on her body, which she stated were caused by petitioner whipping her with a belt. Finally, G.W.-1 stated that petitioner "smacks us in the mouth" and "punches us in the face and chest." The DHHR further alleged that G.W.-1 required medication for a seizure disorder that was not administered properly by the parents. The DHHR also noted that it filed a petition against the parents in 2016, alleging physical abuse. In those proceedings, the parties admitted to the allegations, completed an improvement period, and the children were returned to their care.

The parents appeared before the circuit court in April of 2021 and indicated their desire to waive their adjudicatory hearing and stipulate to certain allegations in the petition. Petitioner admitted that he threw G.W.-1 against a wall on one occasion, that he told the children "to talk about 'the good things'" during their forensic interviews, and that he had been previously adjudicated as an abusing parent for physically abusing the children. Notably, petitioner did not admit to stomping on G.W.-1's legs, to any domestic violence between himself and the mother, or to a failure to properly administer G.W.-1's medication. The circuit court accepted the parents' admissions and adjudicated them as abusing parents. Petitioner moved for a post-adjudicatory improvement period, to which the DHHR and the guardian objected. The circuit court held petitioner's motion in abeyance. In August of 2021, the DHHR filed a family case plan, recommending the termination of petitioner's parental rights to the children.

In September of 2021, the circuit court held a dispositional hearing. The court heard testimony from Barbara Nelson, a licensed psychologist who performed a parental fitness evaluation of petitioner shortly after the adjudicatory hearing. Ms. Nelson testified that there was a "complete lack of responsibility on the part of both parents." In particular, petitioner denied that he threw G.W.-1 against the wall, the same allegation that he admitted to at the adjudicatory hearing. During the evaluation, petitioner denied any physical violence against the children, stating, "I don't hit my kids." Petitioner also denied that he "ever la[id] a hand" on the mother. When Ms. Nelson questioned petitioner as to the 2016 allegations that he struck G.W.-1 in the face, he denied that he hit G.W.-1. Petitioner asserted that he admitted to the allegations in the instant and prior petitions based on the advice of counsel but that he was not truthful when admitting to these allegations. Ms. Nelson noted that petitioner received services in the prior proceedings. However, she testified that, because the allegations in the instant case were "the same or similar" to the allegations in the prior proceeding in 2016, for which petitioner received

remedial services, there was no evidence that petitioner benefited from prior services and no evidence that he corrected his behaviors. Ms. Nelson further explained that based on petitioner's pattern of significant physical violence toward the children and the mother, she determined that he had a "well established personality trait system that [is] violent and volatile." Ms. Nelson concluded that based on these factors, she gave petitioner an "extremely poor prognosis" for parental improvement.

The DHHR then presented testimony from Ms. Jena Cory, a licensed psychologist who performed psychological evaluations of all four children. Ms. Cory testified that G.W.-1, I.W., and A.W. described physical abuse in the home by petitioner, including abuse of the mother. A second therapist, who provided therapy to the children on an interim basis, testified that the children made similar disclosures to her. Both therapists that worked with the children recommended that the children have no visitation with the parents.

The DHHR presented the testimony of petitioner's case worker, who recommended termination of petitioner's parental rights. She explained that the recommendation was based on the similarity in allegations between the prior and instant cases. The worker testified that, because the conditions of abuse and neglect persisted after the provision of services in the earlier case, it was clear that the parents had not benefited from the prior receipt of services. The worker further stated that there were not additional services the DHHR could offer the parents because they failed to take any responsibility for the abuse and neglect of the children.

Petitioner called Ms. Kathy Wise, a privately retained therapist who provided therapy to both parents. She admitted she was not a licensed psychologist, and she testified as a lay witness because she did not qualify as an expert witness. Ms. Wise opined that the DHHR failed to provide the parents with adequate rehabilitative services in the 2016 proceedings. However, Ms. Wise acknowledged that this opinion was based solely upon the interview of the parents since she did not speak with any of the individuals who provided services to the parents. Ms. Wise did not identify any specific problems with the services rendered. The circuit court noted that the parents completed parenting and adult life skills classes, anger management counseling, and other programs, which were satisfactory to the judge presiding over the 2016 case. Ms. Wise further opined that the DHHR's current provision of services was not satisfactory, but, again, did not state with any particularity the alleged deficiency in the services. The court inquired of Ms. Wise and found her to be "evasive [and] non-responsive" to the court's questioning.

Ms. Wise further testified that the parents "did not want to admit to the allegations in both the 2016 and 2021 abuse and neglect cases," but they did so upon the prompting of their counsel. Ms. Wise testified that she did not believe petitioner physically abused the children and that she believed petitioner felt pressured into making admissions. The court found that the parents "indicated that they understood the allegations in both the 2016 and 2021 petitions, that they understood their right to a hearing and representation by counsel, and they freely, knowingly, voluntarily, and intelligently. . . admitted the allegations in the petitions" and that' Ms. Wise's testimony was contrary to those representations. Ultimately, the court found that Ms. Wise was "less than credible and that the weight to be given [to] her testimony should be minimal at best."

Finally, petitioner testified and reaffirmed his admissions in both these proceedings and the prior proceedings. He stated that he made the admissions voluntarily without threat or coercion. Petitioner testified that he was participating in therapy and random drug screening and that he was willing to participate in other services at the DHHR's request. Petitioner agreed that he received services to correct his physical abuse of the children in the prior case and that he did not benefit from those services, as evidenced by his continued abuse of the children. When asked why he should be given another improvement period to correct the same conditions, he apologized and stated he wanted to apologize to his children but did not answer the question. Ultimately, the circuit court found that petitioner's testimony lacked credibility.

The circuit court considered the evidence and found that although petitioner participated in services, his contradictory statements regarding his admissions indicated that he had not taken responsibility for his actions. The court found that petitioner was previously found to have physically abused the children in 2016 and that the services provided to him were not effective, as evidenced by the continuation of abuse. The court found that the children had reported several incidents of physical abuse, as well as coaching and coercion by the parents "to keep those incidents concealed." The circuit court reasoned that petitioner did not demonstrate that he was likely to fully participate in an improvement period. It further found that "there is no evidence that additional services would be effective, in part due to [petitioner's] lack of acceptance of responsibility." The court concluded there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was in the children's best interest. Accordingly, the circuit court terminated petitioner's parental rights by its December 22, 2021, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption by their current foster parents.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. He asserts that he was participating in services, such as random drug screening and anger management therapy, and that his participation demonstrated that he was likely to fully participate in an improvement period. He further argues that he admitted to the allegations in the petition and reaffirmed those admissions at the dispositional hearing, which proves that he fully accepted responsibility for his actions. We find petitioner is entitled to no relief.

In order to be granted a post-adjudicatory improvement period under West Virginia Code § 49-4-610(2)(B), the parent must first "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period." "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely). Critically,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Here, we are not persuaded by petitioner's insistence that he fully accepted responsibility for the conditions of neglect and abuse. Ms. Nelson testified that, during his clinical interview, petitioner consistently denied all abuse. She further testified that petitioner asserted he only made admissions during the proceedings upon prompting of his attorneys. This sentiment was echoed by Ms. Wise, who also testified that petitioner did not want to admit to abusing the children but did so because he was coerced by his attorneys. The circuit court considered this evidence in relation to petitioner's testimony, which it concluded was "less than credible," and ultimately determined that petitioner had not accepted responsibility for the abuse. *See also Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Accordingly, we find no error in the circuit court's determination that

5

petitioner did not accept responsibility for the conditions of abuse and neglect and find no error in its denial of his motion for an improvement period on that basis.[3]

Further, we find no error in the circuit court's termination of petitioner's parental rights to the children. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the "abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Petitioner's primary argument against the court's decision is his acknowledgement of the abuse and his participation in services. Here, however, the evidence clearly showed that there was no reasonable likelihood that petitioner could correct the conditions of neglect and abuse. Notwithstanding the circuit court's finding that petitioner failed to acknowledge the conditions, the court also found that petitioner previously received services in the prior 2016 proceeding. Petitioner himself admitted that he received services from which he obtained no benefit. The evidence showed that petitioner abused his children in 2016, then, despite the provision of services, the children disclosed that petitioner continued to physically abuse them and that petitioner encouraged them to conceal the abuse during these proceedings. This evidence is sufficient to sustain the findings necessary to terminate petitioner's parental rights, and we find no abuse of discretion in the circuit court's ultimate decision.

Petitioner also argues that the circuit court erred in accepting the children's case plans prepared by the DHHR because the case plans were incomplete. Petitioner asserts that by submitting incomplete case plans the DHHR failed to provide petitioner with reasonable goals necessary to achieve reunification.

We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an

---

[3]Additionally, petitioner spends a considerable portion of his argument arguing against the credibility of Ms. Nelson and asserting the circuit court should have given her testimony "the weight it deserved." However, "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). We will not disturb the circuit court's determinations in this regard.

appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009).

Regarding case plans, we have stated that "[t]he purpose of the family case plan as set out in [West Virginia Code § 49-4-408], is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. W.Va. Dep't of Hum. Servs. v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987). Further, "[t]he purpose of the child's case plan is the same as the family case plan, except that the focus of the child's case plan is on the child rather than the family unit." Syl. Pt. 2, in part, *In re Mark M.*, 201 W. Va. 265, 496 S.E.2d 215 (1997) (internal citation omitted). West Virginia Code § 49-4-604(a) provides that "[i]f reunification is not the permanency plan for the child, the plan must state why reunification is not appropriate and detail the alternative, concurrent permanent placement plans for the child to include approximate timelines for when the placement is expected to become a permanent placement."

Here, the DHHR provided a case plan that informed petitioner that due to his failure to acknowledge his conditions of abuse and neglect "there [was] little to no opportunity for [him] to improve as [a] parent[]." The DHHR's reasoning for that recommendation is clear from the content of the case plan, and it also provides an alternative to reunification, which was termination of petitioner's parental rights and adoption of the children. While petitioner argues that the DHHR did not incorporate information from the children's forensic evaluations into the case plans, petitioner was provided those evaluations and was adequately notified. Upon our review, the DHHR's child case plans are not so insufficient as to require this Court to vacate and remand the proceedings for entry of new case plans.

Finally, petitioner argues that the DHHR failed to provide relevant discovery, specifically documents from the 2016 proceedings that were provided to expert witnesses in this case. Critically, Ms. Nelson's forensic evaluation indicates that it was completed in May of 2021. The record shows that petitioner and counsel had sufficient opportunity to review the report, as counsel requested a corrected forensic evaluation and posed a series of questions to the evaluator, and the evaluator's corrected evaluation was filed on August 4, 2021, over one month before the circuit court's final dispositional hearing was held on September 22, 2021. The evaluation lists several documents that the evaluator reviewed from the 2016 proceedings, such as the DHHR's family functioning assessment, the child abuse and neglect petition, and three circuit court orders. However, despite being aware that these documents had been considered by the evaluator, there is no evidence in the record that petitioner requested that these documents be produced. *See* W. Va. R. of Proc. For Child Abuse and Neglect Proc., R. 11 (providing for compulsion of discovery). Moreover, petitioner did not object to the use of these documents or their incorporation into these proceedings. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Finally, petitioner was a party to the 2016 proceedings and provides no explanation why, when fully aware of the relevance of these documents, he could not obtain the records himself. In sum, because petitioner

was provided adequate notice of the documents to be considered and he failed to request or compel the production of those documents, we find no error in the proceedings below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 22, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: September 20, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn